UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VERETTA NORMAN,**<br><br>     Plaintiff,<br><br>     v.<br><br>**THOMAS VILSACK, Secretary of United States Department of Agriculture,**<br><br>     Defendant. | Case No. 1:12-cv-00730 (CRC) |

## MEMORANDUM OPINION

Veretta Norman, a 46-year-old African-American woman, resigned after working less than eight months at the U.S. Department of Agriculture. She claims she was constructively discharged because of her age and race in violation of Title VII of the Civil Rights Act of 1964. The Department has moved for summary judgment. It offers a number of non-discriminatory reasons for ending Norman's probationary employment. Norman, however, has raised genuine questions of fact regarding the grounds the Department provided for terminating her and has provided evidence of a possible discriminatory attitude on the part of her supervisor. As a result, the Court concludes that a reasonable jury could infer that the reasons to dismiss her were pretexts for discrimination. The Court therefore will deny the Department's motion for summary judgment.

**I.    Background**

   A.    Factual Background

Veretta Norman joined the Strategic Initiatives and Partnerships branch of the U.S. Department of Agriculture in January 2009 as a GS-12 Program Analyst. Compl. ¶¶ 5, 7. Her duties included building relationships with minority and religious organizations in order to

increase participation in the Department's subsidized nutrition programs. Id. ¶ 8. Norman's supervisor was the branch chief, Jeff Greenfield, who is white. Id. ¶ 9; Greenfield Aff. at A5. Norman's immediate colleagues were three younger white and Hispanic women. Compl. ¶ 9.

Approximately eight months into Norman's tenure, on July 23rd, 2009, she left the office around 2:30 p.m. in the afternoon. Depo. of Jeff Greenfield, Dec. 18, 2013, at 94 ("Greenfield Depo."). According to Greenfield, Norman's absence caused her to miss the deadline for submitting her timesheets for the two most recent pay periods. Id. at 99. When Greenfield confronted Norman the next day, he contends she lied about her whereabouts. Id. at 104. Norman maintains she truthfully told Greenfield that she was at agency headquarters on work-related business. Depo. of Veretta Norman, Feb. 7, 2014, at 92–93 ("Norman Depo."). Seven days later, Norman received a letter from Greenfield indicating that her probationary employment would be terminated. Compl. ¶ 19. The letter cited four reasons for the termination. Def.'s Mot. Summ. J. Ex. 15. First, Greenfield claimed Norman was absent without leave on the afternoon on July 23rd and later misrepresented why she had left the office early. Id. Second, Greenfield wrote that "your performance has not improved to a level which must be expected of a Program Analyst at the GS 12 grade level," citing Norman's execution of a webinar as an example. Id. Third, Greenfield asserted that Norman "failed to follow Branch requirements" regarding submission of time sheets. Id. And fourth, Greenfield wrote that Norman did not sign in and out of the Department's attendance logs on a daily basis, and that some of her log entries misrepresented the hours she actually worked. Id. In its summary judgment motion, the Department identified Norman's purported excessive use of leave as another reason for her termination. Def.'s Mot. Summ. J. at 21. Any one of these reasons, the

Department contends, would be sufficient to terminate a probationary employee.  Def.'s Mot. Summ. J. at 20.[1]

Norman contends that the rationales offered by Greenfield for her termination are pretexts for racial discrimination.  She insists that she substantially complied with the office's attendance and leave policies and that she was never counselled about her performance.  Pl.'s Opp'n Mot. Summ. J. at 22–24.  She further alleges that Greenfield favored his white subordinates in various respects and treated her—and at least one other African-American employee whom he formerly supervised—with disrespect and condescension.  Id. at 4–9.  The Department denies any discriminatory animus on Greenfield's part and has moved for summary judgment.  The Court held a hearing on the motion on December 16, 2014.

B.   Legal Standards

To make an actionable claim of discrimination under Title VII, Norman must allege that she has suffered an adverse employment action because of her race, color, religion, sex, or national origin.  See 42 U.S.C. § 2000e et seq.; Brady v. Office of Sergeant at Arms, 520 F.3d 490, 493 (D.C. Cir. 2008).  An "adverse employer action" for the purpose of establishing discrimination is one which results in "'materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment such that a reasonable trier of fact could find objectively tangible harm.'"  Newton v. Office of Architect of the Capitol, 839 F. Supp. 2d 112, 115–16 (D.D.C. 2012) (quoting Nurriddin v. Bolden, 674 F. Supp. 2d 64, 89 (D.D.C. 2009)).  As long as discrimination was a motivating factor in the employment decision, a plaintiff may obtain at least declaratory or injunctive relief and attorney's fees and costs.  Univ.

---

[1] Greenfield also testified in his deposition that Norman was running a business from her work computer, Greenfield Depo. at 134, but the Department does not rely on that rationale in its briefs.

3

of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2526 (2013) (citing 42 U.S.C. §§ 2000e–2(m), 2000e–5(g)(2)). The Department has produced evidence, pursuant to the McDonnell Douglas burden-shifting framework, of legitimate, non-discriminatory reasons for Norman's termination. Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–05 (1973)). Consequently, in order to overcome this summary judgment motion, Norman must offer sufficient evidence for a reasonable jury to infer that the Department's asserted reasons were not the actual reasons for her termination. Brady, 520 F.3d at 494.

The Court must grant the Department's motion if it has demonstrated that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Court must draw all reasonable inferences in Norman's favor, accept as true all competent evidence presented by her, and may not make credibility determinations, weigh evidence, or draw inferences from the facts. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The existence of a dispute about an immaterial fact, however, will not defeat a motion for summary judgment. Id. at 248. Moreover, Norman must offer evidence that, while not necessarily admissible at present, "must be capable of being converted into admissible evidence." Gleklen v. Democratic Cong. Campaign Comm., Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000).

**II.   Analysis**

Norman attempts to overcome the Department's summary judgment motion by offering evidence that casts doubt on its explanations for her termination and evidence that indicates discriminatory practices or attitudes on the part of her supervisor. The Court first will discuss

Norman's evidence rebutting the Department's proffered explanations before turning to her evidence of discriminatory conduct.[2]

    A.    <u>Reasons for Termination</u>

        1.    <u>Events of July 23 and 24, 2009</u>

The events of July 23 and 24, 2009 appear to have directly precipitated Norman's termination a week later. The bulk of the termination letter concerns those events, Def.'s Mot. Summ. J. Ex. 15, and Greenfield acknowledged that Norman's conduct on July 23rd led him to recommend terminating her. Greenfield Depo. at 107. Greenfield maintains that Norman left the office at 2:30 p.m. on July 23rd and did not return. Her absence, he says, caused her to miss the deadline for submitting her time sheets for the two most recent pay periods. <u>Id.</u> at 99. Greenfield maintains that, when he confronted Norman the next day, she told him she had taken a department shuttle to pick up an employee badge. <u>Id.</u> at 100–01. Doubting Norman's explanation, Greenfield says he checked the shuttle logs for that afternoon, which indicated she did not take the shuttle to agency headquarters. <u>Id.</u> at 130–31. He also says that he contacted the Department's security manager, who replied that Norman had missed her appointment. <u>Id.</u> at 105. Greenfield thus accuses Norman of lying to him about her whereabouts. <u>Id.</u> 107. Norman disputes Greenfield's version of events. She maintains she drove her own car to headquarters, was unable to pick up her badge because she had not made an appointment, and waited there to see if anyone would miss their appointment. She says she truthfully explained all this to Greenfield the next day. Norman Depo. at 89–94. Norman also accuses Greenfield of twice changing his story regarding whom he contacted at headquarters. Pl.'s Opp'n Mot. Summ. J. at 16.

---

[2] Norman's counsel acknowledged at the hearing that Norman has abandoned her age discrimination claims. The Court will therefore grant the Department's motion as to those claims.

The Court expresses no opinion at this stage regarding the credibility of Norman's version of her absence from the office. Accepting Norman's testimony regarding her own conduct, however, the Court finds that she has offered at least a plausible account of events, particularly since the Department has not provided any independent evidence to corroborate Greenfield's telling. Indeed, Department counsel acknowledged at the motions hearing that a material question of fact exists regarding these events. Norman therefore has offered sufficient evidence to support an inference that the primary rationale for her termination was pretextual.

### 2. Time Sheets

Another reason cited by the Department for Norman's termination was her late submission of time sheets. Def.'s Mot. Summ. J. Ex. 15; Greenfield Depo. at 126–28. Greenfield specifically alleged that Norman missed the deadline to submit time sheets for pay periods 13 and 14, on July 23, 2009—the afternoon she was absent from the office. Id. The Department provides no evidence to establish that Norman submitted late time sheets for any other time period. Because Norman's absence on July 23rd is subject to dispute, as discussed above, and the Department cites no other instances of late time sheets, the Court concludes that Norman has also raised a genuine question of fact concerning the truthfulness of this rationale for her termination.

### 3. Excessive Leave

The Department also contends it was justified in terminating Norman because she used excessive leave. Def.'s Mot. Summ. J. at 10. Greenfield testified that he had warned Norman that her use of leave "was an ongoing problem from the outset," citing in particular a trip she was planning that would take her out of the office for 30 days. Greenfield Depo. at 62, 125. Norman counters that Greenfield has misrepresented her use of leave. She maintains she had requested and was granted leave without pay when she first interviewed for the job. Norman Decl. ¶ 4.

Indeed, Norman has submitted evidence showing that she left the position with a positive leave balance. Id. ¶ 5; Pl.'s Opp'n Mot. Summ. J. Ex. 17. Based on Norman's testimony and supporting evidence, the Court concludes that she has raised a genuine question of fact as to whether this purported reason for her termination was pretextual as well.

        4.      Attendance Log Book

The Department contends that Norman was terminated because she did not sign in and out of the attendance log on a daily basis, and her "notations on the . . . log did not reflect the actual hours she worked." Def.'s Mot. Summ. J. at 12–13, 21; Def.'s Reply at 7–9. Counsel explained at the hearing that the Department began requiring employees to sign in and out of the logs after September 11, 2001 as a safety measure. Greenfield described it as a way to account for people "in the event of an evacuation." Greenfield Depo. at 132. There is no indication that Norman would have gained additional salary or benefits as a result of any misstatements in the log book. The Department points out some discrepancies over two weeks where Norman wrote sign-in times before the office's badge reader indicated she had entered the building's garage, or sign-out times after she had exited the garage. Compare, e.g., Def.'s Mot. Summ. J. Ex. 9 (July 22 badge entry at 9:05 a.m.) with Def.'s Mot. Summ. J. Ex. 13 (July 22 sign in at 8:30 a.m.). But the discrepancies also cut the other way by a similar length of time on some days. Compare, e.g., Def.'s Mot. Summ. J. Ex. 9 (July 29 badge exit at 7:06 p.m.) with Def.'s Mot. Summ. J. Ex. 13 (July 29 sign out at 6:15 p.m.). Given the purpose of the log books and the conflicting nature of the discrepancies, as well as Norman's testimony that the attendance log policy was not uniformly enforced, she has raised genuine questions of fact regarding the Department's explanation that it terminated her on this basis.

5.     Work Performance

Finally, the Department maintains that Norman was terminated due to "poor work performance." Def.'s Mot. Summ. J. at 20. Greenfield testified that a webinar presentation Norman prepared needed significant feedback and revisions, and recounted verbally counselling her regarding her performance. Greenfield Depo. at 62; Greenfield Aff. at A49. Norman's second-level supervisor, Duke Storen, also testified that two of Norman's presentations needed feedback and revisions. Storen Depo. at 72–74; Storen Aff. at 3. Norman disputes that her performance was lacking and asserts she was never told otherwise. Norman Decl. ¶ 8.

Although Norman has raised genuine questions of material fact regarding the truthfulness of the Department's principal and other supporting rationales for terminating her, she faces a more difficult obstacle in rebutting her supervisors' subjective opinions of her work performance. See Tolson v. James, 315 F. Supp. 2d 110, 116 (D.D.C. 2004) (noting that it is the decisionmaker's assessment, not plaintiff's, that is relevant to a discrimination claim). In the face of evidence rebutting its four other explanations, the Department could still be entitled to summary judgment if, for example, "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000). The Department, however, offers no corroborating evidence of performance issues or counselling—such as contemporaneous notes documenting the shortcomings in Norman's presentations or documentation of meetings with Norman about her work quality. Given the scant evidence establishing Norman's alleged poor performance, the record does not "conclusively" reveal that her performance was a non-discriminatory reason for the Department's decision. Reeves, 530 U.S. at 148, accord Aka v.

Washington Hosp. Ctr., 156 F.3d 1284, 1298 (D.C. Cir. 1998) (*en banc*) ("[C]ourts traditionally treat explanations that rely heavily on subjective considerations with caution").[3] Nor does the record reveal "abundant and uncontroverted independent evidence that no discrimination had occurred." Reeves, 530 U.S. at 148.  Indeed, as discussed below, it is Norman who has presented evidence raising an inference of discriminatory motivation on the part of her supervisor.

      B.      Discriminatory Motivation

In addition to calling the reasons for her termination into question, Norman also alleges that Greenfield engaged in various practices and made certain statements that she says reflect a discriminatory attitude on his part.  None of these actions by themselves would amount to an adverse employment action for purposes of a Title VII discrimination claim.  If true, however, they might collectively indicate discriminatory animus and therefore support an inference of pretext. Aka, 156 F.3d at 1289.  Norman specifically alleges that Greenfield excluded her—and only her—from meetings and other office gatherings, Norman Aff. at A13, A14, A19, A36; spoke to her in a condescending manner and did not introduce her to visitors, id. at A9, A26; and communicated with her through other employees rather than speaking with her directly, id. at A15.

Norman supports these allegations with a declaration from B. Warren Brooks, an African-American GS-13 Management Analyst whom Greenfield supervised before Norman joined the office.  Pl.'s Opp'n Mot. Summ. J. Ex. 8.  For example, Brooks likewise describes

---

[3] The Department also argues that it is entitled to an inference against discrimination because Greenfield hired Norman in the first place. Def.'s Reply at 21–22.  That Greenfield hired Norman may be evidence of non-discrimination, but it is not dispositive.  Evidence that the same person hired (or promoted) and then fired an employee cannot immunize an employer from liability for discrimination and it does not alone suffice to establish summary judgment. Czekalski v. Peters, 475 F.3d 360, 369 (D.C. Cir. 2007).

being prohibited from contacting Greenfield on his cell phone, although white employees were allowed to do so, id. ¶ 5, as well as being excluded from meetings relevant to his work, id. ¶ 6. Brooks also asserts that Greenfield described African-American organizations and events in demeaning terms and denigrated Brooks' outreach to historically black colleges and universities. Id. ¶¶ 4, 8 (alleging Greenfield's response to his request to attend a "Blacks in Government Conference" was "you cannot go to a party" and that "Greenfield told me that the White House Report on Historical Black Colleges and Universities was 'not important'"). The Brooks declaration, which the government has not contested, constitutes independent evidence to support an inference that Greenfield unlawfully discriminated against Norman.

### III. Conclusion

For the foregoing reasons, the Court concludes that Norman has raised genuine questions of fact about the Department's rationales for terminating her and has submitted evidence to support an inference that her supervisor harbored discriminatory attitudes. She has therefore met her burden to overcome the Department's summary judgment motion with respect to her racial discrimination claims. Any further determinations in this case would require weighing the credibility of the parties and witnesses, which is properly left for the jury. The Court will, however, grant summary judgment for the Department on Norman's age discrimination claims. The Court will issue a separate Order consistent with this Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: December 30, 2014